Filed 8/22/25  P. v. Herrera CA6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMIAN ALEX HERRERA,<br><br>    Defendant and Appellant. | H051745<br>(Santa Cruz County<br>Super. Ct. No. F26219)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 21, 2025, be modified as follows:

1.   On page 1, line two of the caption, the word "Clara" is changed to "Cruz" so the line reads:

(Santa Cruz County

There is no change in judgment.

_____
BROMBERG, J.


_____
DANNER, ACTING P. J.


_____
RODRIGUEZ, J.*


*People v. Herrera*
H051745

_____

&ast; Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/21/25  P. v. Herrera CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAMIAN ALEX HERRERA,<br><br>    Defendant and Appellant. | H051745<br>(Santa Clara County<br>Super. Ct. No. F26219) |

In 2015, Damian Alex Herrera pleaded guilty to attempted murder of a member of a rival gang and was sentenced to 35 years in prison.  In 2022, Herrera petitioned for resentencing under what is now Penal Code section 1172.6, hoping to take advantage of new restrictions on imputing malice for murder or attempted murder.  (Subsequent undesignated statutory references are to the Penal Code.)  The trial court denied the petition, ruling, based on the preliminary hearing transcripts, that Herrera had failed to make out a prima facie case for relief.  On appeal, Herrera challenges the trial court's use of preliminary hearing transcripts.  In light of the California Supreme Court's recent decision in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), we reject this challenge and affirm.

# I. BACKGROUND

Because Herrera pleaded guilty prior to trial, we derive the facts recounted below from the preliminary hearing transcripts. We also grant Herrera's request, filed September 30, 2024, to take judicial notice of those transcripts and of his direct appeal.

## A. The Shooting

Herrera was a member of a Norteño gang. On April 19, 2013, he went to a party with three friends, including his girlfriend Giavanna Kristi Hagio and Juan Manuel Castillo. There, Herrera saw Alberto Solis, a member of a rival Sureño gang who was a "green light" and previously had been shot by Norteño gang members. After leaving the party, Herrera exchanged words with Solis, who ran into a nearby apartment.

Herrera drove away, retrieved a shotgun, and returned to a parking lot near where the party had been held. Herrera encountered Solis and several others, who yelled at Herrera. Then, Herrera took two steps forward, raised a shotgun to hip height, and without aiming fired a single blast. The blast struck Solis in the head, neck and shoulders and another person, Sylvia Cruit, in the face, eyes, and throat.

## B. The Prosecution

### 1. The Charges

In 2015, Herrera was charged with attempting to murder Solis. The charge included special allegations that Herrera acted "willfully, deliberately, and with premeditation" and that he personally and intentionally discharged a firearm causing Solis great bodily injury. Herrera was also charged with mayhem against Cruit, assault with a deadly weapon, street terrorism, and possession of a firearm by a felon.

Hagio and Castillo were charged as well, Hagio with being an accessory after the fact and Castillo with attempted murder, mayhem, and other crimes.

### 2. Preliminary Hearing

At the preliminary hearing the prosecution presented both eyewitness testimony and testimony from investigators who, among other things, interviewed Solis and Hagio.

2

The eyewitness, Esteban Sanchez, testified that after leaving the party he saw Herrera and Castillo confronting Solis, Cruit, and others, and that he joined Solis's group in yelling at Herrera. Sanchez also testified that Herrera drew a shotgun and fired a single shot at the group.

A sheriff's deputy who investigated the incident testified that Solis and Hagio corroborated Sanchez's account. Although Solis did not identify who shot him, he told a deputy that he got into an argument with Herrera and Castillo and that, before he was shot, one of them raised his arm, and there was a boom. Hagio did not see Herrera shoot, but she verified that a shot was fired and provided other important details. For example, Hagio told deputies that Solis was a "southern" gang member who had "a green light" from Herrera's Norteño gang and that, after talking with Castillo about how Solis was not supposed to be in Santa Cruz, Herrera retrieved what Hagio believed was a gun. Then, according to Hagio, Herrera and Castillo went to the parking lot, there was "one loud boom," and Herrera returned to the car with a shotgun. Later, in a hotel, Herrera told Hagio to move the shotgun into the trunk of the car because otherwise "it's going to be all your fault for me going down."

Deputies found a shotgun in the trunk of Hagio's car as well as live and expended shotgun rounds both there and in her hotel room.

### 3. *Guilty Plea and Sentencing*

In October 2015, Herrera pleaded guilty to the attempted murder of Alberto Solis and to mayhem against Sylvia Cruit, and he admitted that he personally and intentionally discharged a firearm in the course of the attempted murder. In January 2016, the trial court imposed a stipulated sentence of 35 years for attempted murder with personal firearm discharge, and a concurrent sentence of four years for mayhem. Castillo pleaded guilty to attempted murder as well as mayhem, and he admitted that the principal was armed with a firearm. Hagio pleaded guilty to being an accessory after the fact.

Herrera initially appealed, but the appeal was later dismissed at his request.

3

**D. The Petition for Resentencing**

In November 2022, acting pro per, Herrera filed a preprinted form petition for resentencing under what is now section 1172.6. On the form, Herrera checked boxes stating that (1) the information filed against him allowed the prosecution to proceed on a theory of "attempted murder under the natural and probable consequences doctrine," (2) he accepted a plea in lieu of a trial where he could have been convicted of attempted murder, and (3) he could not presently be convicted of attempted murder because of changes made to Penal Code sections 188 and 189 effective January 1, 2019. Herrera did not submit any evidence supporting these statements.

After the trial court appointed counsel, the prosecution moved to dismiss the petition. The prosecution argued that Herrera had failed to make out a prima facie case for relief because the preliminary hearing transcripts and his plea showed that he was prosecuted on the theory that he was the one and only shooter and that he actually attempted to kill Solis, a still-valid theory of attempted murder under sections 188 and 189. Herrera responded that his petition was facially sufficient and that the testimony in the preliminary hearing transcript did not conclusively establish Herrera was the actual shooter or exclude the possibility that defendant was convicted under a now-invalid theory of imputed malice. Herrera submitted no evidence in support of this response.

After conducting a hearing, the trial court granted the People's motion and denied Herrera's petition for resentencing. Based on its review of the file and the preliminary examination testimony, the court reasoned that there was only one weapon fired and Herrera "was prosecuted as the shooter." The court acknowledged that Herrera contended that he could have been prosecuted under an imputed malice theory such as the natural and probable consequences doctrine, but found that was not what the prosecution did. Accordingly, the court concluded that Herrera was not eligible for relief under section 1172.6.

Herrera filed a timely notice of appeal.

4

## II. DISCUSSION

Herrera argues on appeal the trial court erred in concluding that he failed to make out a prima facie case under section 1172.6 based on the preliminary hearing transcripts. We disagree. As the Supreme Court recently recognized in *Patton*, while testimony in preliminary hearings may not be used to establish disputed facts, such hearings may be used to determine the theory on which a defendant was prosecuted, which is what the trial court did here.

In 2018, the Legislature amended sections 188 and 189 to eliminate several theories of liability for murder based on imputed malice, including the natural and probable consequences doctrine. (*Patton, supra*, 17 Cal.5th at p. 556; see also Stats. 2018, ch. 1015, §§ 2-3.) The Legislature also made this change retroactive and provided for resentencing by adding what is now section 1172.6. (See *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 [describing history]; see also *Patton, supra*, 17 Cal.5th at p. 558 [noting expansion to cover attempted murder convictions based on the natural and probable consequences doctrine].) Under this section, a person convicted of attempted murder may petition to have that conviction vacated and to be resentenced if the person was charged with "attempted murder under the natural and probable consequences doctrine," was convicted or pleaded guilty to attempted murder, and presently could not be convicted of attempted murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Resentencing under section 1172.6 proceeds in three stages: (1) The court determines whether the petition contains adequate information (§ 1172.6, subd. (b)); (2) if the petition does, after briefing and a hearing the court determines "whether the petitioner has made a prima facie case for relief" (§ 1172.6. subd. (c)); and (3) if this has been done, the court conducts an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under current law (§ 1172.6, subd. (d)(1), (3).) The purpose of the

5

prima facie inquiry in the second stage is limited—"to distinguish petitions with potential merit from those that are clearly meritless"—and therefore the " 'prima facie bar' " is " 'very low.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972.)  Accordingly, at the prima facie stage, trial courts may not engage in factfinding, must assume that the petitioner's factual allegations are correct, and may determine only " ' "whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id.* at p. 971.)  Nonetheless, in conducting the prima facie inquiry, courts may look beyond the face of the petition to the record of conviction and must deny resentencing " 'if the record . . . "contain[s] facts refuting the allegations made in the petition." ' " (*Id.* at p. 971.)

Here, the record of conviction refuted the conclusory allegations in Herrera's petition.  The operative information charged Herrera with attempted murder based on "malice aforethought"—not the natural and probable consequences doctrine or any other now-invalid theory of imputed malice—and alleged that Herrera attempted to murder Solis "willfully, deliberately, and with premeditation."  In addition, far from suggesting an alternative theory based on the natural and probable doctrine, the evidence presented at the preliminary hearing confirmed that Herrera was being prosecuted based on a theory of direct liability.  The prosecution presented evidence that there was a single shotgun blast.  The prosecution also presented evidence that Herrera was the shooter.  An eyewitness, Sanchez, identified Herrera as the shooter and Herrera's accomplice Hagio told investigators that Herrera returned from the shooting with a shotgun.  Moreover, far from disputing that he was the shooter, Herrera admitted to the allegation under section 12022.53, subdivision (c) that he personally discharged a firearm.  Thus, the preliminary hearing transcripts and the rest of the record of conviction establish that Herrera was prosecuted on the theory that he personally attempted to murder Alberto Solis.

6

Because such a direct liability theory is still valid under sections 188 and 189 (*Patton*, *supra*, 17 Cal.5th at p. 563), the trial court properly concluded that Herrera failed to make out a prima facie case for relief under section 1172.6.  (See § 1172.6, subd. (a)(3) [requiring that petitioners "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019"].)

Herrera argues that the trial court should not have considered the preliminary hearing, or at least the testimony of witnesses at the hearing, in conducting the prima facie inquiry.  This argument is foreclosed by the California Supreme Court's opinion in *People v. Patton*, *supra*, 17 Cal.5th 549, which was issued after Herrera filed his opening brief.  In *Patton*, the Supreme Court resolved a split among Court of Appeal decisions and held that, in applying section 1172.6, courts may rely on "unchallenged, relief-foreclosing facts within a preliminary hearing transcript" for the limited purpose of determining whether a petitioner was prosecuted under a now-invalid theory.  (*Patton*, *supra*, at p. 564.)  Although the Supreme Court recognized that the prima facie burden is low and that courts may not engage in factfinding in determining whether that burden has been satisfied, it recognized that preliminary hearing transcripts may be used to show whether there is "a disputed issue that entitles the petitioner to an evidentiary hearing." (*Id*. at p. 566, fn. omitted.)

Indeed, this case is remarkably similar to *Patton*.  In *Patton*, as here, the defendant was charged with willful, deliberate, and premeditated attempted murder.  (*Patton*, *supra*, 17 Cal.5th at p. 557).  In *Patton*, as here, at the preliminary hearing the prosecution presented evidence that there was a single shooter and that the defendant was that shooter, and the defendant subsequently pleaded guilty to attempted murder and admitted an allegation that he personally discharged a firearm.  (*Ibid*.)  Finally, as here, the defendant in *Patton* filed a conclusory petition on a preprinted form and, when the prosecution moved to dismiss, failed to allege any specific facts that would show he was prosecuted on a natural and probable consequences theory.  (*Id*. at pp. 559-560.)  In

7

*Patton*, the Supreme Court concluded that the preliminary hearing showed that the defendant's conviction "was premised on him being the sole shooter" and that the defendant had not shown any "factual dispute about whether he played a meaningfully different role in the attempted murder" warranting an evidentiary ruling. (*Id.* at p. 569.) We reach the same conclusion here.

It is true that Herrera, unlike the defendant in *Patton*, had two accomplices, who also were charged with crimes. However, this difference is immaterial because Herrera presented no evidence that the prosecution intended to prosecute him on the theory that either of his accomplices fired the shotgun or otherwise attempted to murder Solis. Indeed, one accomplice (Hagio) pleaded guilty to being accessory after the fact, and the other (Castillo) pleaded guilty to an attempted murder that was not willful, deliberate, and premeditated, and admitted a principal was armed—admissions consistent with Herrera being the sole shooter. Moreover, far from suggesting that he was being prosecuted based on the conduct of his accomplices, Herrera merely asserted that Sanchez was an unreliable witness and that he (Herrera) may have lacked the requisite intent for the attempted murder of Solis. Consequently, just as in *Patton*, there is no evidence that the petitioner was prosecuted on a now-invalid theory and therefore no grounds for concluding that he made out a prima face case warranting an evidentiary hearing.

Herrera asserts that he might have been convicted under the natural and probable consequences doctrine because he admitted to attempting to murder Solis "by an assault by means of force likely to produce great bodily injury and . . . with a deadly weapon." But the natural and probable consequences doctrine did not apply anytime that a defendant committed a crime related to a murder or attempted murder. To the contrary, under the natural and probable consequences doctrine, a defendant could be held responsible for a crime "committed by the *direct perpetrator* that was the 'natural and probable consequence' of the crime the *accomplice* aided and abetted." (*People v. Gentile* (2020) 10 Cal.5th 830, 843, superseded by statute on another ground as stated in

8

*People v. Wilson* (2023) 14 Cal.5th 839, 869, italics added.) Here, Herrera pleaded guilty to attempting to murder Solis based on *his* assault on Solis, not any crime committed by his accomplices. Thus, Herrera's admission that he assaulted Solis does not suggest that he was convicted of attempted murder under the natural and probable consequence doctrine and therefore does not establish a prima facie case under section 1172.6.

In *Patton*, the Supreme Court ordered a remand because the defendant requested the opportunity to plead additional facts that might satisfy his prima facie case. (*Patton*, *supra*, 17 Cal.4th at pp. 569-570.) As Herrera has not made a similar request, we conclude that the order denying his motion for resentencing should be affirmed without a remand.

### III. DISPOSITION

The order denying Herrera's petition under section 1172.6 is affirmed.

                                         _____

                                         BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
RODRIGUEZ, J.*

*People v. Herrera*
H051745

---

      * Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.